UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF MISSISSIPPI

**FILED**

Nov 24, 2009

DAVID CREWS, CLERK
BY_____ DEPUTY

1:59 pm

UNITED STATES OF AMERICA

v.  CRIMINAL NO.: 1:09CR – 148-P-D

RANDY BENHAM

## INFORMATION
(On Waiver of Indictment)

The United States Attorney charges that:

### Count One

1. From on or about January, 2003, to on or about June 23, 2008, in the Northern District of Mississippi and elsewhere, RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, defendants, aided and abetted by each other and by others known and unknown to the United States Attorney, devised and executed a scheme to defraud the United States, the States of Mississippi, New York, South Carolina and others and the National Association of Attorneys General of over $20 million in taxes and fees on the receipt, possession, sale and distribution of cigarettes under the Master Settlement Agreement, (MSA), all in order to obtain money by means of false and fraudulent pretenses, representations and promises.

### BACKGROUND

2. Until October 2006, Jerry Burke was president and sole shareholder of Globe Wholesale, 120 East Franklin Street, Tupelo, Mississippi 38804, and Post Office Box 7313,

Tupelo, Mississippi 38802, a Mississippi corporation in the business of wholesale sales of tobacco products. In October, 2006, Burke sold Globe Wholesale to RANDY BENHAM, but remained with Globe as a paid consultant.

3. RANDY BENHAM is the President of BRIGGS TOBACCO AND SPECIALTY COMPANY, INC., 1916 Vanderhorn Drive, Memphis, Tennessee 38134, a Tennessee corporation selling tobacco products wholesale. BENHAM is also the owner of A&A DISTRIBUTION, (A & A), a Mississippi corporation selling tobacco products wholesale. A & A actually does business as GLOBE DISTRIBUTING, 120 East Franklin Street, Post Office Box 7313, Tupelo, Mississippi 38802.

4. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) enforces the Contraband Cigarette Trafficking Act (CCTA) and regulations governing the sale, distribution and shipment of cigarettes. Federal law requires that any person who sells, ships, transfers or otherwise disposes of more than 10,000 cigarettes or more than 60,000 prior to March 9, 2006 in one transaction must keep records of the transaction that state the full name of the purchaser or recipient, the address to which the cigarettes are destined, and the quantity of cigarettes in the transaction.

5. The Tobacco Tax and Trade Bureau (TTB), administers and enforces laws and TTB regulations pertaining to record keeping of operations and transactions by cigarette manufacturers.

6. Under the Federal Contraband Cigarette Trafficking Act (CCTA), the term "cigarette" means any roll of tobacco wrapped in paper or any other substance which, because of its appearance, the type of tobacco used or its labeling, is likely to be offered to or purchased by

consumers as a cigarette. A "contraband cigarette" means a quantity over 10,000 cigarettes which bear no evidence of the payment of state or local cigarette taxes where such cigarettes are found unless exempt from such taxes.

7. A "package" of cigarettes contains 20 cigarettes; a "carton" of cigarettes contains ten packages or 200 cigarettes; a "case" of cigarettes contains 60 cartons or 12,000 cigarettes.

8. On the dates alleged above, Mississippi Code Annotated Section 27-69-13 imposed an excise tax upon the sale, use, consumption, handling and distribution of cigarettes in Mississippi. On every package of 20 cigarettes the tax was 18 cents or $1.80 in tax on each carton of cigarettes and $108.00 on each case of cigarettes.

9. Section 27-69-13 requires wholesalers who sell cigarettes in Mississippi to purchase and affix on packaging tax stamps for the cigarettes as payment of the Mississippi cigarette tax. Those tax stamps must be purchased through the Mississippi State Tax Commission.

10. A wholesaler selling cigarettes in Mississippi must file a monthly Tobacco Excise Return with the State Tax Commission showing the number of unstamped cigarettes received that month, plus the cigarettes stamped and available for sale that month, plus the cigarettes sold to licensed wholesalers and exempt persons that month, as well the cigarettes shipped or sold out of state, and the net taxable cigarettes and other pertinent information.

11. Under South Carolina Code §§ 12-21-610 and 620, South Carolina imposes a privilege tax on every person, firm, corporation, club and association within the State who imports, receives or acquires from outside the State or from any other source any tobacco for use or consumption within the State, subject to the payment of a license tax measured by and

graduated by their volume of sales and acquisitions within the State. The tax per package is 7¢; per carton 70¢ and per case $42.

12. Under South Carolina Code § 12-21-735, each cigarette distributor who receives untaxed cigarettes for distribution in South Carolina is subject to the tax imposed in § 12-21-620 and must report to the State all cigarettes sold or disposed of in the State, and taxes thereon not later than the twentieth day of the month after the sale or disposition.

13. In 1998, forty-six states and six territories entered into a Master Settlement Agreement (MSA) with several major cigarette manufacturers. The settlement was to end further lawsuits between states and those cigarette manufacturers. As part of the settlement, the states released the manufacturers from liability in exchange for the manufacturers' agreement to limit advertising and to make annual monetary payments to the states based on annual cigarette sales. The states of New York and South Carolina are MSA states.

14. In 1996, the four states of Mississippi, Florida, Texas, and Minnesota (non-MSA states), which had previously sued the tobacco industry to recover health care costs caused by tobacco used in those states, negotiated a combined $40 billion civil settlement with the tobacco industry.

15. Under the settlement, there are three classifications of manufacturers. A "Participating Manufacturer" is a party to the original MSA. "Subsequent Participating Manufacters" are those that joined the MSA later and agreed to pay a large fee based upon past cigarette sales. "Non-Participating Manufacturers" are those that are not members of either group.

16. Both groups of Participating Manufacturers must pay under the MSA approximately $5.00 per carton of cigarettes manufactured in or imported into the United States to the National Association of Attorneys General (AG). The amounts due are based on truthful monthly reports of the number of cigarettes sold in each MSA state.

17. Non-Participating Manufacturers must receive the agreement of a state before they distribute cigarettes in an MSA state. This agreement includes establishing an escrow account in the state to which the $5 per carton payments must be made at least annually based on the number of cigarettes sold in the state as measured by state excise taxes applied to such cigarette sales. Those deposits are to create a "level playing field" with Participating Manufacturers. The laws also require that manufacturers file annual certifications truthfully stating that the required escrow payments were made. All importers of cigarettes manufactured abroad must make the required MSA reporting and escrow payments for sales into MSA states. The escrow payment is adjusted annually based on changes in the market and the participation of additional manufacturers.

18. During the period of this Information, cigarettes cost the manufacturer between $1 to $2 per carton to make. Numerous taxes are added to the manufacturing costs of cigarettes in both Mississippi and South Carolina, including a $3.90 Federal Excise Tax (FET) and a 50¢ "Tobacco Buy Out" (TBO) tax per carton. The MSA payment for participating states is also added.

19. The following were parts of the scheme to defraud:

(a) A cigarette importer in New York and other wholesale tobacco distributors would and did sell and transfer approximately one million cartons of cigarettes to a wholesale tobacco

5

distributor in South Carolina. Those cigarettes were manufactured abroad by a non-participating manufacturer and imported into the United States;

(b) Only one-fourth of the above cigarettes were sold and shipped directly to the South Carolina distributor, in which the taxes, fees, including MSA escrow payments, were made;

(c) Approximately three-fourths of those cigarettes were illegally diverted through RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale in Tupelo, Mississippi, on which the MSA escrow payments and South Carolina tobacco excise taxes were not paid, resulting in underpayments of $5,400,000 for the benefit of New York and several other states and $800,000 to South Carolina;

(d) By avoiding the MSA escrow payment and state excise taxes, the importer in New York could and did sell cigarettes well below market price, thus greatly increasing the volume of his sales. The wholesaler could and did distribute a much larger volume of cigarettes because his product was then sold to retailers and consumers at a much lower price than legitimate cigarettes. Burke and BENHAM also profited from the scheme by charging 70¢ to $1.00 per carton for cigarettes they illegally diverted to the South Carolina wholesaler.

(e) To conceal the scheme, the cigarette importer in New York created false invoices reflecting that cigarettes were sold to RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale;

(f) RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, then falsely reported in fact or by omission to the Mississippi Tax Commission that

the cigarettes were sold in Mississippi when in truth and fact they were sold in the state of South Carolina;

(g)     The wholesale tobacco distributor in South Carolina would and did submit false monthly reports showing sales of only 250,000 cartons of cigarettes to the South Carolina Department of Revenue when in truth and fact he sold approximately one million cartons;

(h)     To conceal the scheme from South Carolina Department of Revenue auditors, RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, the cigarette importer in New York and the cigarette wholesaler in South Carolina, aided and abetted by others, did create, submit and cause to be submitted false and fraudulent reports and records to the South Carolina Tax Commission;

(i)     Finally, RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, the New York importer and the South Carolina wholesaler caused multiple uses of wire transfers and the United States mails to execute the scheme to defraud, thereby obtaining moneys to which they were not entitled.

Execution of The Scheme

20. On or about January 12, 2007, in the Northern District of Mississippi and elsewhere, for the purpose of executing the scheme, RANDY BENHAM, d/b/a GLOBE DISTRIBUTING or Jerry Burke, d/b/a Globe Wholesale, defendants, did knowingly cause to be delivered by United States mail according to the directions thereon an envelope addressed to the Mississippi State Tax Commission at Post Office Box 1033, Jackson, Mississippi 39215, which envelope contained a materially false and fraudulent monthly cigarette report reflecting that cigarettes received by defendants were sold in the State of Mississippi, when in truth and fact, as they then

well knew, the cigarettes were illegally diverted to the State of South Carolina to avoid MSA escrow and South Carolina tobacco excise tax payments, all in violation of Title 18, United States Code, Sections 2, 1341and 2341(1)(A) and (B) and (2).

### Count Two

From on or about October, 2006, to on or about July, 2008, in the Northern District of Mississippi and elsewhere RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, defendants, aided and abetted by others, did knowingly and intentionally make and cause to be made materially false statements as to information required by regulation to be kept by a person who ships, sells and distributes any quantity of cigarettes in excess of 60,000 (10,000 after March 9, 2006), that is, defendants did knowingly made and caused to be made materially false statements and representations to the Bureau of Alcohol, Tobacco & Firearms, the Tobacco Tax and Trade Bureau, the United States Attorney General and the Mississippi State Tax Commission by and through the data contained upon the monthly tobacco excise tax returns as to their beginning and ending inventory of cigarettes, the total quantity of cigarettes received and the total quantity of cigarettes distributed, each required to be made pursuant to Title 18 United States Code, § 2343(b)(1)-(3), in violation of Title 18, United States Code, § 2342(b).

### Count Three

From on or about October, 2006, to on or about July, 2008, in the Northern District of Mississippi and elsewhere, RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a/ Globe Wholesale, defendants, did knowingly and willfully conspire with other persons known and unknown to the United States Attorney to conduct financial transactions knowing that the property, U. S. Currency and instruments representing such, were the proceeds

of unlawful activity and which in fact were proceeds of specified unlawful activities, that is, the sale of contraband cigarettes in violation of 18 U.S.C. 2342(a), making and causing to be made false monthly cigarette tobacco excise tax returns, in violation of 18 U.S.C. 2342(b), schemes to defraud by use of wire transmissions and the United States Mail, in violation of 18 U.S.C. § 1341, with intent to promote and carry on said specified unlawful activities, and to conceal and disguise the nature, source, ownership and control of the proceeds of said specified unlawful activities, all in violation of Title 18, United States Code, Sections 1956(a)(1)(A) and (B)(i).

The following were parts of the conspiracy:

1. That RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, would acquire and distribute large quantities of cigarettes to avoid MSA payments, MSA escrow payments, tobacco buy-out taxes, federal excise taxes, state tobacco taxes and other fees, thereby acquiring large sums of cash and other financial instruments.

2. That RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale, would and did distribute cigarettes by illegally diverting them through Mississippi to avoid MSA payments, MSA escrow payments, tobacco buy-out taxes, federal excise taxes, state tobacco taxes and other fees thereby acquiring large amounts of cash and other financial instruments.

3. That RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale and others would make and cause to be made false monthly tobacco excise tax returns to the State of Mississippi and other states regarding beginning and ending cigarette inventories, total quantities of cigarettes received and total quantities of cigarettes distributed.

4. That RANDY BENHAM, d/b/a GLOBE DISTRIBUTING and Jerry Burke, d/b/a Globe Wholesale would and did conduct financial transactions in cash derived from the unlawful sale and reporting of cigarettes by purchasing and selling different quantities of cigarettes, thereby promoting and carrying on their unlawful activities and purchasing assets to conceal and disguise the proceeds of their unlawful activities.

All in violation of Title 18, United States Code, § 1956(h).

### Forfeiture Notice

The allegations contained in Counts One through Count Three of this Information are hereby realleged and incorporated by reference herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982 (a)(1) and (a)(2)(A).

Notice is hereby given pursuant to Fed. R. Crim. P. 32.2(a) that upon conviction of the offenses set forth in Count One of this Information, the defendant RANDY BENHAM, d/b/a GLOBE DISTRIBUTING, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as the result of such violations.

Notice is further given, pursuant to Federal Rules of Criminal Procedure 32.2(a) that upon conviction of the offenses in violation of 18 U.S.C. § 2342(b), a "specified unlawful activity" pursuant to 18 U.S.C. §1956 (c)(7), and the offenses in violation of 18 U.S.C. §1956(a)(1)(A), (B)(i), and (h) set forth in Counts Two and Three of this Information, the defendant RANDY BENHAM d/b/a GLOBE DISTRIBUTING, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982 (a)(1), any property, real or

10

personal, involved in such offenses, and any property traceable to such property.

If any of the property described above, as a result of any act or omission of the defendant:

(1)    can not be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third party;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to forfeiture of any other property of the defendant up to the total value of any property described above.

_____
JIM M. GREENLEE
United States Attorney

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 1:09CR 148- P-D

RANDY BENHAM

## PENALTIES

### Count One
[18 U.S.C. 1341]

NM than 20 years imprisonment,
NM than $250,000 fine, or both,
NM than 3 years supervised release,
$100 special assessment.

### Count Two
[18 U.S.C. 2342(b)]

NM than 3 years imprisonment,
NM than $250,000 fine, or both,
At least 1 year supervised release following imprisonment,
$100 special assessment.

### Count Three
[18 U.S.C. 1956(h)]

NM than 20 years imprisonment,
NM than $250,000 or the laundered amount, whichever is greater, or both,
NM than 3 years supervised release,
$100 special assessment.